**MARK MIGDAL & HAYDEN**
PAUL A. LEVIN (CA State Bar No. 229077)
LAUREN M. GIBBS (CA State Bar No. 251569)
80 SW 8th Street, Suite 1999
Miami, Florida 33130
Telephone:      (305) 374-0440
e-mail:         paul@markmigdal.com
                lauren@markmigdal.com

**FEDERAL DEPOSIT INSURANCE CORPORATION**
JOHN STUART TONKINSON (to seek admission pro hac vice)
3501 Fairfax Drive
Arlington, Virginia 22226
Telephone:      (214) 673-7549
e-mail:         jtonkinson@fdic.gov

Attorneys for Plaintiff Federal Deposit
Insurance Corporation as Receiver
for Washington Mutual Bank

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR WASHINGTON MUTUAL BANK,<br><br>Plaintiff,<br><br>vs.<br><br>CAL COAST FINANCIAL CORP.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR CONTRACTUAL INDEMNITY** |

COMPLAINT

# INTRODUCTION

1. Pursuant to written agreements, defendant Cal Coast Financial Corp. ("Cal Coast"), including by and through its President and designated broker Roger Bakshi, brokered mortgage loans for Washington Mutual Bank and/or its subsidiaries, including Long Beach Mortgage Company (collectively, "WaMu"). As part of their agreements, Cal Coast promised to indemnify WaMu for any losses arising out of its acts or omissions and its provision of inaccurate or incomplete applications or other documentation for loans brokered by Cal Coast.

2. After WaMu funded the loans from Cal Coast, WaMu sold Cal Coast-brokered loans into residential mortgage-backed securitized trusts ("RMBS Trusts") for which Deutsche Bank National Trust Company served as trustee ("Trustee"). The Trustee ultimately asserted claims that it suffered losses because of defective loans sold into the RMBS Trusts, including at least twenty-one mortgage loans brokered by Cal Coast ("Cal Coast Defective Loans").

3. Plaintiff Federal Deposit Insurance Corporation as Receiver for WaMu ("FDIC-R") incurred losses settling the Trustee's claims. FDIC-R's losses resulted from Cal Coast's acts or omissions and its inaccurate or incomplete loan applications or other documentation prepared by or at the direction of Cal Coast including, but not limited to, Cal Coast's submission of loan applications and documentation that misrepresented such things as the borrowers' credit histories, employment status, income, or occupancy status.

4. FDIC-R demanded that Cal Coast honor its written contractual indemnification obligation. Because Cal Coast has not honored its obligations, FDIC-R brings this action as successor to WaMu's rights, titles, powers, and privileges.

COMPLAINT

## PARTIES, JURISDICTION, AND VENUE

5. The Federal Deposit Insurance Corporation is an instrumentality of the United States and is organized and exists under the laws of the United States. 12 U.S.C. §§ 1811, 1821(d). Pursuant to 12 U.S.C. § 1821(d)(2), FDIC-R succeeded to all rights, titles, powers, and privileges of WaMu and of any stockholder, member, account holder, depositor, officer, or director of WaMu with respect to the bank and its assets. FDIC-R brings this action in its capacity as the duly appointed receiver of WaMu, which the Office of Thrift Supervision closed on September 25, 2008, appointing FDIC as Receiver for WaMu that same day.

6. Cal Coast is a California corporation with its principal place of business in Pleasanton, California. Cal Coast is registered and licensed to do business in California and Texas, and transacts business from a branch office in Pleasanton, California.

7. This Court has subject-matter jurisdiction pursuant to 12 U.S.C. § 1819(b)(1) and (2) and 28 U.S.C. §§ 1331 and 1345.

8. Cal Coast contractually agreed to venue in this district. *See* 2002 Broker Agreement ("2002 Agreement"), ¶ 21, attached hereto as Exhibit 1. Venue is also proper in this district pursuant to 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district because, among other things, the contractual business relationship was entered into by WaMu in this district and the place of performance for all or some of the obligations sued upon was in this district.

## FACTUAL ALLEGATIONS

9. WaMu was a federal savings bank that, directly or through affiliates and/or subsidiaries, among other things, purchased, funded, and

COMPLAINT

sold mortgage loans to investment trusts that packaged loans into securities for investors, which are generally known as residential mortgage-backed securities.

10. On information and belief, Cal Coast engaged in the business of brokering, originating, processing, packaging, submitting for funding, selling and/or transferring loans secured by real property.

### A. Cal Coast's Contractual Obligations

11. Cal Coast and WaMu had a contractual business relationship, governed by one or more mortgage broker agreements, including the 2002 Agreement and the 2003 Premier Mortgage Broker Agreement ("2003 Agreement"), attached hereto as Exhibit 1 and Exhibit 2, respectively (collectively, the "Agreements").

12. Cal Coast agreed that it would prepare, package, and submit loan applications on behalf of loan applicant borrowers seeking WaMu loans. Cal Coast was responsible for, among other things, representing loan applicants in locating lenders; interacting directly with and interviewing the borrower; counseling and assisting the borrower in the financing process; choosing the loan product with the borrower; collecting relevant information and documentation in support of the loan application; preparing the loan application and submission package; and submitting the completed loan package to WaMu.

13. Cal Coast was compensated for any loans funded by WaMu.

14. Pursuant to the Agreements, Cal Coast expressly agreed to indemnify WaMu as follows:

> [Cal Coast] will indemnify, defend and hold [WaMu] …
> harmless from any and all costs, claims, charges, actions,
> causes of action, losses or liability arising either directly or
> indirectly, regardless of any indemnitee's negligence, by

4

reason of [Cal Coast's] negligence, a breach of the terms or conditions of this Agreement, or in any way as a result of an inaccurate or incomplete application or other documentation prepared by or at the direction of [Cal Coast]. (2002 Agreement).

[Cal Coast] agrees to indemnify, hold harmless, and defend [WaMu] . . . from and against any and all losses, claims, demands, damages, expenses or costs which in any way arise out of or relate to any alleged act or omission of [Cal Coast] . . . whether in connection with an Application, a loan, or this Agreement.  (2003 Agreement).

### B.   The Cal Coast Defective Loans

15.   Pursuant to the Agreements, Cal Coast brokered the 21 Defective Loans summarized on Exhibit 3 that is incorporated by reference and attached hereto.

16.   As noted above and set forth in more detail below, the Trustee asserted claims against FDIC-R based on alleged breaches of WaMu's representations and obligations concerning the quality and characteristics of the loans, the borrowers, and the collateral on certain loans sold into the RMBS Trusts, including the Cal Coast Defective Loans. Accordingly, FDIC-R incurred losses in connection with the Cal Coast Defective Loans.

17.   The Cal Coast Defective Loans contained inaccurate and incomplete loan applications or other documentation because of misrepresentations in the application materials, including but not limited to misrepresentations relating to the quality and characteristics of the loans, the borrowers, and the collateral.  As a result, the Cal Coast Defective Loans failed to meet all applicable requirements and terms and conditions of the Agreements.

18.   As an example of a defective loan covered by the 2002 Agreement, the loan documents for borrower MP for two mortgage loans

in April 2006 contained numerous deficiencies, inaccuracies, and material misrepresentations. For example, Cal Coast prepared and submitted loan application documents for MP that failed to disclose that she purchased two other properties earlier that month upon which she incurred more than $670,000 in mortgage debt, resulting in misrepresentations about MP's ability to pay back the loans.

19. As another example, Cal Coast prepared and submitted loan application documents for borrower MB in and around April 2006 that included a rent verification that was signed by someone other than his landlord to hide the fact that MB's relatives owned the residence. Not only did the document fail to meet the loan application requirements, but it also resulted in a misleading picture of MB's creditworthiness as a borrower.

20. With respect to the 2003 Agreement, in and around December 2006, Cal Coast prepared, packaged and submitted to WaMu a loan application and supporting documentation for VL's anticipated purchase of a home that she purportedly intended to occupy in Newark, California. On December 15, 2006, VL's purchase of this property closed at a sales price of $838,000 financed by two loans funded by WaMu, including the $670,400 first lien deed of trust at issue in this demand (the "VL loan"). In reality, VL's purchase price was inflated so she could avoid making the required down payment, and instead obtain additional, undisclosed mortgage financing for that purpose. Moreover, VL never occupied the Newark, California property nor was she ever employed at a purported California job that was used to substantiate her employment income and history. Instead, VL lived in New York both before and after origination of the VL loan. Accordingly, the loan application misrepresented VL's ability

to repay the loan, as well the quality of the loan as loans for non-owner occupied properties are riskier than loans for primary residences.

### C. WaMu's Sale of the Cal Coast Defective Loans to the RMBS Trusts

21. After WaMu funded the Cal Coast Defective Loans, WaMu sold each of them to the RMBS Trusts.

22. In connection with such sales, and in reliance on the materials, representations, obligations, and remedies Cal Coast provided, WaMu provided representations, obligations, and remedies to the RMBS Trusts regarding the quality and characteristics of the loans, the borrowers, and the collateral. With respect to defective loans, WaMu was liable to the RMBS Trusts where there was a material misrepresentation or omission in a loan application or other supporting documentation, among other things.

### D. The Trustee Action and FDIC-R's Settlement with Trustee

23. After WaMu failed, on December 30, 2008, the Trustee filed a proof of claim with FDIC-R asserting that WaMu breached representations and warranties in connection with the loans sold to various RMBS Trusts. On August 26, 2009, Trustee filed a lawsuit in the District Court for the District of Columbia against FDIC-R for losses resulting from such loans that WaMu sold to the RMBS Trusts, including the Cal Coast Defective Loans.

24. FDIC-R defended itself against the claims in the Trustee's lawsuit and eventually settled with the Trustee.

25. Pursuant to a settlement agreement with an effective date no earlier than September 5, 2017, FDIC-R and the Trustee settled claims against FDIC-R, including representation and warranty breach claims arising out of or relating to the Cal Coast Defective Loans. On September

5, 2017, FDIC-R paid the $3,006,929,660 Receivership Certificate to the Trustee in settlement of Trustee's claims, including claims on the Cal Coast Defective Loans. Settlement of the Trustee's claims for that court approved amount was objectively reasonable. FDIC-R's indemnification claims are timely because they are brought within six years of the date of accrual. 12 U.S.C. § 1821(d)(14).

26. FDIC-R was liable for the losses due to breaches of WaMu's representations and obligations concerning the quality and characteristics of the loans, the borrowers, and the collateral on certain loans sold into the RMBS Trusts, which loans included the Cal Coast Defective Loans. The Trustee asserted that FDIC-R was contractually responsible for breaches of representations and warranties including, but not limited to, as a result of misrepresentations, negligence, or fraud in the origination of the loan; appraisals inconsistent with underwriting guidelines; and defaults such as, for example, misrepresentations of income. Given Cal Coast's role and conduct in connection with the Cal Coast Defective Loans, including Cal Coast's relationship to the borrowers and its preparation, gathering, and submission of loan applications and documentation, FDIC-R's liability and loss to the Trustee arose out of or related to Cal Coast's acts or omissions and its provision of inaccurate or incomplete loan applications and supporting documentation prepared by or at the direction of Cal Coast.

**E.    Cal Coast's Breach of the Indemnification Obligations**

27. On October 28, 2021, FDIC-R sent a demand letter to Cal Coast seeking indemnification for its losses arising out of Cal Coast's and/or related to Cal Coast's acts and omissions and inaccurate or incomplete loan applications or other documentation in connection with the Cal Coast

Defective Loans. Cal Coast has not honored its obligation to indemnify under the Agreements.

28. The Agreements provide that the prevailing party in any action to enforce it may recover its reasonable attorneys' fees. In order to enforce FDIC-R's rights under the Agreements, FDIC-R has retained outside counsel and agreed to pay reasonable attorneys' fees. In addition, FDIC-R has assigned in-house counsel to assist in actively preparing to bring this case to trial.

29. All conditions precedent to the relief sought in this action have been fulfilled.

## FIRST CLAIM FOR RELIEF

### (Contractual Indemnification – 2002 Agreement)

30. Plaintiff FDIC-R incorporates by reference the allegations set forth above as though set forth fully herein.

31. The 2002 Agreement is a valid and enforceable contract.

32. Plaintiff substantially performed all its obligations under the 2002 Agreement.

33. FDIC-R is entitled to indemnification from Cal Coast for losses and liabilities that FDIC-R suffered settling the Trustee's claims, arising directly or indirectly by reason of Cal Coast's breach of the terms or conditions of the 2002 Agreement or in any way a result of inaccurate or incomplete applications or other documentation prepared by or at the direction of Cal Coast, in connection with the Cal Coast Defective Loans (excluding the VL Loan, which falls under the 2003 Agreement).

34. Cal Coast breached its obligations to indemnify FDIC-R, resulting in damage to FDIC-R in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Contractual Indemnification – 2003 Agreement)

35. Plaintiff FDIC-R incorporates by reference the allegations set forth above as though set forth fully herein.

36. The 2003 Agreement is a valid and enforceable contract.

37. Plaintiff substantially performed all its obligations under the 2003 Agreement.

38. FDIC-R is entitled to indemnification from Cal Coast for losses and liabilities that FDIC-R suffered settling the Trustee's claims, arising out of or relating to Cal Coast's alleged acts or omissions, in connection with the VL Loan.

39. Cal Coast breached its obligations to indemnify FDIC-R, resulting in damage to FDIC-R in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff FDIC-R respectfully requests that it be granted:

A. A judgment against Cal Coast in an amount to be proven at trial for its breach of its indemnification obligations;

B. Pre-judgment interest under 12 U.S.C. § 1821(l) or applicable state law;

C. Reasonable attorneys' fees;

D. Costs and expenses; and

E. Any other relief as the Court deems just and proper.

DATED: August 9, 2023                MARK MIGDAL & HAYDEN

By:        /s/ Paul A. Levin
Paul A. Levin

| | | |
|---|---|---|
| 1 | DATED: August 9, 2023 | FEDERAL DEPOSIT INSURANCE CORPORATION |
| 2 | | |
| 3 | | |
| 4 | | By: /s/ J.S. Tonkinson |
| 5 | | John Stuart Tonkinson (to seek admission to pro hac vice) |
| 6 | | |
| 7 | | Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank |
| 8 | | |
| 9 | | |

11

COMPLAINT